I have raised four issues in this appeal. In Argument 1, I ask this Court to consider whether to reverse Mr. Riddlespriger's conviction and remand for a new trial because he was denied a fair trial by the prosecutor's numerous improper comments in closing and rebuttal argument. A new trial is warranted because the cumulative effect of the prosecutor's misconduct denied Mr. Spriger a fair trial and cast doubt on the integrity of the judicial process. First, the prosecutor misstated the law regarding the presumption of innocence in closing argument. The law presumes the innocence of the accused until the point during deliberations when the jury concludes that there existed proof beyond a reasonable doubt. In this case, the prosecutor in closing argument violated this basic rule when she told the jury the presumption of innocence that he walked into this courtroom is gone because he's proven guilty. The prosecutor went on to state, you know he did it, he's been proven guilty beyond a reasonable doubt, his presumption of innocence is gone. Was there any objection to that? No, Your Honor, there was not. Does it make any difference that in the closing argument, those comments, which were made a couple times, were in the context of here's what we proved, here's why he's not telling the truth, here's what actually happened, your conclusion is that he is basically been precluded from the presumption of innocence by the proof. Well, Your Honor, it's still improper, to answer your question, it's still improper to make, to diminish the state's burden of proof at that stage, during, before the deliberations, before the jury concludes that the evidence is proven guilty beyond a reasonable doubt. So the prosecutor making those three times diminishing the presumption of innocence during closing argument still is prejudicial error in this context, even though as you said, the prosecutor said that the presumption is gone because the evidence is proven guilty beyond a reasonable doubt. But nonetheless, that at that point, Mr. Willis Prager-Till still maintained the presumption of innocence. So the prosecutor's repeated statements that the presumption is gone, tainted the jury deliberations and undermined, diminished the prosecutor's burden of proof at that stage before the deliberations had commenced.  In that closing argument, did the prosecutor say what I say is not the law, that the judge will give you the instructions of what the law is? Usually that's thrown in, I don't know. I believe he did, Your Honor. Nonetheless, again, it is still prejudicial for the prosecutor to diminish the presumption of innocence and to diminish the state's burden of proof, which still was at that point of the trial to prove Mr. Willis Prager guilty beyond a reasonable doubt. The prosecutor misstated the law in another way. The prosecutor stated in the rebuttal, if you believe anything that Mr. Willis Prager said, you have to believe all 20 state's witnesses are lying. Courts have held that these remarks are prejudicial, Your Honor, because the correct standard for consideration of evidence is not whether one side of witnesses are more believable, but whether taking all of the evidence into consideration, guilt as in every element of the offense has been proven beyond a reasonable doubt. The jury can still believe that the state's witnesses are not lying and still acquit. They can believe the state's witnesses are not lying and still acquit because the state has not proven every element of the offense beyond a reasonable doubt. So those statements were improper also. Then the prosecutor made prejudicial, disparaging remarks about defense counsel. The prosecutor stated in the rebuttal, I don't know what counsel is talking about. It's once again him trying to distract you from the truth. Distracting you, distracting you from the truth in this case by throwing everything at you. Distraction, distraction, distraction. Now the prosecutor may challenge the persuasiveness of defense counsel's argument or his theory of the case, but he is not allowed to argue, try to free his client based upon deception and distraction because that does not aid the jury in weighing the evidence and arouses antagonisms against defense counsel and the defendant. Next, it is improper for the prosecutor to place the authority of his office behind the assertion that a witness is lying or vouch for the credibility of one of his witnesses because it may induce the jury to believe, to trust the government's authority in judgment rather than its own view of the evidence. Here the prosecutor vouched for the credibility of one of his witnesses, Mr. Williams, by saying Mr. Williams has no reason to lie and put the authority of his office behind the claim that when he said that Mr. Wittelsberger is lying. Finally, the prosecutor also improperly appealed to the emotions of the jury by arguing that Marlon Poindexter and his family and children deserve to find the defendant guilty. It is generally improper to refer to a victim's family in argument, and this is improper because it appealed to the jury's emotions and invited them to sympathize with the surviving family members and directed the jury's attention away from the evidence and towards an issue that is not relevant. Even if this court concludes that each instance alone of prosecutorial misconduct does not amount to reversible error, the cumulative effect of these errors, we can't take these comments in isolation, the cumulative effect of these improper remarks by the prosecutor denied Mr. Wittelsberger a fair trial and undermined the integrity of the jury verdict. This court should review the error under the plain error rule because such a pattern of prosecutorial misconduct so seriously undermines the integrity of the judicial proceeding as to support reversal under the plain error doctrine. Alternatively, the other problem that this court may consider the plain error under is the costly bail plan. Now, this case was a credibility case, came down to a credibility case, where Mr. Wittelsberger testified that the person in the back seat of the car with him, Brian Blake, shot the decedent who was in the front seat, and Brian Blake testified that Mr. Wittelsberger shot the decedent. So, in this regard, it was a credibility, costly balance case. And for these reasons, I ask this court to reverse Mr. Wittelsberger's conviction and demand for a new trial. In argument two, I ask this court to reverse Mr. Wittelsberger's conviction because he was denied a fair trial where the trial court allowed relevant testimony by state's witness Alosia Elliott to testify over a defense objection that was raised in the post-trial motion that she had dated Mr. Wittelsberger before she dated the decedent, and that Mr. Wittelsberger left a message on Elliott's machine two months before the murder that he still loved her. Elliott testified that she had dated Mr. Wittelsberger from August 2008 to December 2008, and the decedent from 2009 to March 2011. The decedent was murdered in July 2011. It should also testify that Mr. Wittelsberger called her in April 2011 and left a message on her machine. This evidence was irrelevant to the question presented to the jury regarding the murder charge, and moreover, Elliott's testimony was irrelevant because it did not show an ongoing dispute over Elliott, and thus did not show motive to kill the decedent. Can I interrupt you here? Yes, you may. What about the fact that the defendant's brother himself said it was an argument or a dispute over a girl? That's correct. That could have come in as motive evidence, perhaps, arguably, but that still, if you look at what Elliott testified to, there's nothing that she testified to that shows a dispute, a grudge, or motive. Thank you, Your Honor. Thank you, Counsel. Counsel? May I please court? Counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. Back when I was in law school, I worked for Professor Edward Kiyanka, and he loved to quote Mark Twain, I would have written a shorter letter, but I didn't have the time. That's kind of what you have to do when you argue a criminal case before this court. This case has four initial issues, and then it's got supplemental brief. And you just have to figure out what's the most important thing. So I would like to, with the permission of this court, I would like to begin with the issue of whether Miller v. Alabama applies to defendants who are over the age of 18. Obviously, if the court has any questions on any of the other issues, I'd be glad to answer them, and I will get to them on time permitted. Just simply put, Miller does not apply to 20-year-olds. He's not a juvenile. And Miller, when considering the defendant's claim under the Eighth Amendment, specifically limited its holding to juveniles under the age of 18. It specifically held mandatory life without parole for those under the age of 18 at the time of the crime violates the Eighth Amendment's prohibition on cruel and unusual punishments. Thus, under Miller, it's obvious that the special sentencing factors need not be applied to a 20-year-old. That's what we're talking about here, is a man two years past the age. Now, the Illinois Supreme Court has not spoken consistently as to whether the Eighth Amendment's cruel and unusual punishment clause is coextensive with the proportionate penalties clause or whether it provides greater protections. And Patterson, in 2014, the Supreme Court said it was coextensive, but in Williams, in 2012, they said it provided greater protections. If the two are coextensive, which is the most recent ruling of the Supreme Court, then there can be little doubt that the defendant's argument fails. Miller was preceded by and relied strongly on Roper, which held that juveniles under the age of 18 could not be sentenced to death. Now, the Roper court acknowledged that drawing the line at 18 years of age was subject to objections always raised about categorical rules. But the Roper court concluded, and here I quote, a line must be drawn. Since the age of 18 is the point where society draws the line for many purposes between childhood and adulthood, the Roper court concluded that that was the age at which the line was drawn. Likewise, in the case here, we have a de facto life claim. 20, I believe it's 20 plus 30, so a total of 50 years. But it must be, 18 must be the age at which a de facto life sentence can be imposed without a special hearing on juvenile brain development. So only if the, I think Miller and Roper make it absolutely crystal clear that we've drawn the line at 18, and Miller does not in any way apply to anyone over that age. And I would ask this court to rule that there simply is no claim. If and only if the court finds that the Illinois Supreme Court is more, offers more protection, would anything else apply? Now, I'd like to discuss a couple of cases that have looked at this. I filed a motion to cite additional authority in this case, which has not been ruled on. I think it's been granted, but I may be wrong. We'll let you know. Assuming it's been granted, counsel, you may reply also to that additional authority. It was filed on September 4th. And filed electronically with this court and with the appellate offenders. And, I mean, I stood to the rule. Counsel had five days, I believe, to respond to it and did not. But in any case, it's been over three weeks since I filed it. But that would be People v. LaPont, which addressed both the Eighth Amendment and the Proportionate Penalties Clause. In that case, the defendant was 37 days past his 18th birthday, and he was sentenced to life in prison without parole. He argued that Miller should apply, and he relied on People v. House, which is one of the cases that the defendant relies on in his supplemental brief here. LaPont disagreed with House and looked to Roper. And after discussing the general differences between juveniles under the age, it noted that after discussing the differences between juveniles under the age of 18 and 18, that Roper went on to note drawing a line at 18 of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By that same token, some under 18 have already attained a level of maturity that some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest. So the LaPont court, relying on Roper, found it is, and here I quote, it is hard to imagine a clearer statement of a right-lying rule than the foregoing. It pointed out that Miller drew on Roper and in no way departed from its limitation to those who were under the age of 18. It pointed out that in Miller the court's holding was that mandatory life without parole for those under the age of 18 at the time of their crimes violated the Eighth Amendment. LaPont concluded there was nothing in Miller that remotely implied that the Supreme Court wished to blur that right line. And it addressed House and said that if House was saying that Roper, Graham, and Miller did not draw a bright line at the age of 18 and strongly disagreed, instead it found that the Supreme Court did so, again quoting, unmistakably. It went on to say that this is something the legislature needs to decide and I would agree with that strongly. The court also, I mean, excuse me, the people also addressed in our brief people versus Thomas. Again, very similar logic. There the defendant relied on Harris rather than House. And Thomas said that the legislature, in the amendments that have been made to the sentencing, the legislature has determined that the youth-related considerations in Miller were relevant to sentencing only for defendants who were under the age of 18. The fact that the legislature has deemed that failure to take those factors into account does not render a sentence cruel or degrading or disproportionate to the offense that shocks the moral sense of the community. Again, agreeing with Roper, the Thomas Court concluded that a line must be drawn and that it adopted the reasoning and dissent in Harris that it is for the legislature and not the courts to revisit the sentencing scheme and afford greater discretion to trial judges. Now there are two other arguments the defendant makes relying on Miller and I would note they only apply if Miller applies to 20-year-olds and that's the as-applied challenge and the de facto life challenge and I think we've covered both of those in our brief. Touching very briefly on the prosecutorial misconduct, I would like to point out that our Supreme Court has twice said, excuse me, once said and the public court has said that it is not error for a prosecutor to say in closing argument if here's the evidence, when you look at that evidence, the cloak of innocence has been removed. People v. Sawisky, the prosecutor said now is the time to remove the cloak of innocence from this defendant and the Supreme Court found it clear that when the prosecutor's comment was read in its entirety, it was apparent that her argument regarding the defendant's guilt was based on the evidence and I believe People v. Tomes basically says the same thing. This was argument as you and Justice Welch both noted, this was argument, the jury was instructed that it was argument and was instructed that they were only to consider evidence. So your position basically is you can't just look at phrases, you have to look at the context. Absolutely, Your Honor. Okay. Are there any other questions? Thank you. I don't think so. Thank you, Counsel. Counsel? Your Honor, regarding the fact of life sentence issue that I raised in the supplemental brief, it is true there is no juror guideline at 18 years old. However, there are recent Illinois appellate court cases, People v. House and People v. Harris, that extended the reasoning to cases where individuals are legally older, past the age of juvenile, but where the brain development has not reached the level of mature adult. And that under the Illinois Proportionate Penalties Clause, a sentence that, which the Illinois Proportionate Penalty Clause emphasizes the consideration of rehabilitation and under an evolving standard of decency in this, in our society, it is reflected in Miller that Harris and House recognize that youthful offenders should not automatically be given harsh sentences. And by you, this was a discretionary sentence, wasn't it? Was this automatic? Well, it was. I believe he got 25 for murder and 25 automatic firearm enhancement. Yeah. The enhancement. Yes. The predicate sentence was discretionary. Correct. Okay. Correct. What kind of evidence? Is it medical evidence to show brain development? In those two cases, I'm not familiar. Well, there is reference to that it's the bright line of the brain development of a youthful offender. What kind of evidence do you need to prove brain development under these two cases? Well, you would have to have some type of testimony, whether the characteristics of youth that Miller recognizes, impulsivity. But those are general characteristics. You don't have any expert testimony. We don't have any expert testimony in this case, no, Your Honor, but there is testimony that Mr. Willis-Spitter, there was a bonafide doubt of his fitness before the trial and we had an evaluation of Willis' testimony that he was a personality disorder and had some of those characteristics of a juvenile that Miller discussed, impulsivity, risk-taking, a failure to consider the consequences of actions. Those are the characteristics of youth that Miller recognized. And I think that House and Harris are correct that a bright line at 18 cannot be drawn regarding the development of the brain of a 20-year-old as opposed to an 8-year-old, and that's what House and Harris recognized. Harris was 19 and I believe House was 19 too. So the question is whether the reasoning of Miller and the evolving standard of decency reflected in that that the special attendant characteristics of youth of an 18-year-old equally apply to some 19- and 20-year-olds. Did Roper take care of that? No, I don't believe in this context, Your Honor. I don't believe so. And again, the U.S. Supreme Court has a way in on this, but here it was the fact of life sentence that the U.S. Supreme Court in Rehouse recognized that there can be some sentences that are not actually life imprisonment that could exceed life expectancy, and we have that here with Mr. Riddlespitter. He will not be released from prison until 71, and as I set forth in the brief, there's studies that the life expectancy of a person who spends most of their life in prison is like 64 or something. So this applies as a de facto life sentence. He was sentenced to, without a special consideration at the sentencing hearing, of the underdevelopment of the brain and the characteristics of youth that an underdeveloped brain manifests and impulsivity, he was risk-taking, failure to consider consequences. All those things are present here. And I think this Court, I'm urging this Court to follow Harris in House and find that the reasoning of Miller under the Eighth Amendment applies here under the Illinois Proportion of Penalties Clause and then ask for a remand for resentencing on that particular issue to consider. Are you asking for a remand on the predicate 30 or on the enhancement of both? For both. I'm asking for both. And on that, and I did it in the state of my brief, it could be possible that the Court would have to reduce the sentence even less than the minimum sentence. Are the factors that you enumerated in your argument on Miller basically listed as factors of mitigation in the sentencing statute? Well, not as sufficient enough to take in the special characteristics of a young person with an undeveloped brain, such as the impulsivity and the he was risk-taking and so on and so forth. Those were not considered at the sentencing hearing in the context of the- Yes. Were they available to be considered under the mitigation section of the Illinois sentencing statute? Were they available? Yes, to be considered under the language of that statute. I believe the defense counsel could have made that kind of an argument. Yes, Your Honor. I don't think that they were mandatory for the Court to consider those under the mitigating factors, statutory mitigating factors. No. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We will take the case under advisement, issue an order in due course. Thank you.